So our last case for argument is McKinley v. Butler. Mr. Jackson. Thank you, Your Honor, and may it please the court. It is undisputed that before his testimony, no background of any violent history, no fights, no armed robberies, nothing to indicate that this was anything more than a horrible once-in-a-lifetime mistake. Yet the sentencing judge imposed a 100-year sentence on a 16-year-old boy without even mentioning the words juvenile, without mentioning the word youth, or anything like it. That violated the Eighth Amendment. And I'll discuss two independent reasons for reversal. First, Mr. McKinley fairly presented his Eighth Amendment claim in state court. And second, even if he didn't, cause and prejudice forgive that procedural default, and Miller, Graham, and traditional Eighth Amendment principles require a new sentence. I'll begin with fair presentment. Mr. McKinley fairly presented his claim in two ways. First, he framed his claim in terms so particular as to call to mind a specific constitutional right when he called his sentence excessive and cited the proportionate penalties clause, which has an identical standard to that of the Eighth Amendment. And he also alleged a pattern of facts well within mainstream constitutional litigation when he brought the same arguments in state and federal court. Mr. Jackson, I'm struggling with this because I thought your position here is that he clearly presented, fairly presented this claim to the state courts under Miller years before Miller was decided. Is that right? Our argument is that he fairly presented an attractive nature. It was clearly established at the time of that sentencing and of the direct appeal. Now, that's a legal fiction, obviously, but it's one that the courts follow and it must be the case. 2254D and 2254E codifies Teague. And it says that if this petitioner failed to bring his claim in the state courts, he can still have an evidentiary hearing. Now, it makes no sense for him to be able to bring his claim on his factual basis without being hamstrung on his legal basis as well. So we know that there has to be that legal fiction. We have to assume that for purposes of Teague and that Miller and Graham were retroactive that during his direct sentence, during his direct appeal, there had to be the law was clearly established at that time. And at that point, he fairly brought his claim in state court. So moving on, when it comes to fair presentment, the proportionate penalties clause, there is a Supreme Court decision, it's Patterson, and it says that the two are coextensive. The Eighth Amendment and the proportionate penalties clause are coextensive. Illinois appellate courts have taken that to mean that the two are the same standard. For all purposes? All purposes. That's our primary position is that for all purposes, when you cite the proportionate penalties clause, it is as if you're bringing an Eighth Amendment claim. Is there any difference in Illinois law between a challenge to your individual sentence as opposed to a challenge to the penalties for a statute more generally? I don't think so, Your Honor. I think it's the same, and I think furthermore that Illinois appellate courts have rejected the argument in both applying this to the statute and in applying it to a specific sentence. Those are identical, and they rejected the argument that they're different. Specifically, in re Isaiah D., which brought a challenge to the transfer statute, but in Isaiah D., it was both the violent and habitual juvenile statutes, which both impose penalties. So we know that when it comes to penalties, they're the same. Now, even if I'm wrong, even if that's not the case, we still win because when it comes to juveniles, it's different. Now, Respondent cites Clemens to show that the standards are different, but Clemens had to deal with adults. We know that Supreme Court jurisprudence, juvenile jurisprudence, says that when it comes to juveniles, sentencing courts have to consider rehabilitation, and Clemens said the difference between the two standards is that the proportionate penalties clause requires a consideration of rehabilitation, and the Eighth Amendment does not. But we know for juveniles that the Eighth Amendment does require a consideration of rehabilitation before sentencing a juvenile to life behind bars. So moving on, I think it helps us in both ways. First of all, the government has a contrary position that the procedural aspects of Miller are not retroactive. We disagree with that. However, what does help us with that brief is that it admits, the government admits, all parties admit that Miller is not limited to mandatory life without parole, that sentencing courts have to consider certain aspects before they sentence a juvenile to life without parole. But that's the procedural part of Miller, right? Yes. So our position is contrary to that. Our position is that these procedures, these requirements that sentencing courts must go through before they impose a life without parole sentence on a juvenile, even though they sound procedural, they are substantive. Just like the mitigating factors in Lockett v. Ohio, those were death penalty requirements. They were mitigating factors that had to be considered by the court, and yet the Supreme Court in Safford v. Park said these are actually substantive requirements. Did the judge who sentenced him say anything about his age? All it said, it gave lip service to his age. It referenced the probation officer's letter that said he is 16 years old. And that's it. Nothing else. I believe that that is improper and it's an inadequate consideration of youth, and therefore it violated the Eighth Amendment, whether under Miller and Graham or under traditional Eighth Amendment principles, which even Respondent admits that there has to be some sort of... Well, you're saying there wasn't any consideration of age, just that he knew his age. He knew his age. There had to be something... That's right. But he didn't discuss whether 16-year-olds who commit murder are likely to commit murders when they're released after 50 years. That's right. It would be inadequate for him to think he would recidivate in 10 years, in 20 years, even in 30 years, 50 years. The requirement is that forever, the judge has to make a conclusion that the juvenile will never be, will forever be a danger to society. And that didn't happen here. Isn't this an example of how stupid it was for Congress to replace parole with supervised release? I absolutely agree because, and even in this case, there is... It's a long sentence. It doesn't have to be 100 years. It could be 20 years. And then you observe the person's behavior in prison and maturing and does he pursue educational opportunities and then you make a judgment whether this person is likely to continue committing serious crimes. That's right. In this case, my client is... He's a novel inmate. He's got his GED. He's been fantastic for him. He'd be out of prison with parole, but he doesn't have that opportunity. He has to serve 100% of his sentence under Illinois law, which is something the district court got wrong, by the way. Now quickly turning to waiver, you don't have to address retroactivity at all. We don't have to worry about what the government says about the procedural versus the substantive aspect because the respondent here waived that argument in its first reasonable... But didn't they do that before Miller was even brought into the case? I'm sorry? Didn't that happen before Miller was even mentioned in this case? Retroactivity was an issue before Miller was. Yes. And so you're in the position... Usually when we're dealing with habeas cases, we're trying to bend over backwards to avoid, in essence, defaults by pro se petitioners and so on. And you seem to be taking the position here that when the state said we don't see any retroactivity issues, long before Miller, I think, was even decided, but certainly before it was cited to the district court, that it should be held to that position. That's right. Miller was not cited until the reply. That's correct. So they have objected that Miller is not retroactive, at least in part, at the first opportunity, correct? I disagree, Your Honor. Two parts to that. First, we're also arguing that Graham is retroactive. And because... Graham doesn't apply. I mean, this is not a Graham case. But let's assume you're wrong about Graham. Why has the state waived retroactivity as to Miller? So by bringing in... Even assuming that Graham is wrong, still by bringing in Graham and talking about recent Supreme Court cases and talking about juvenile jurisprudence generally, which everyone knows has been in a state of flux for the past several years, when you're talking about juvenile jurisprudence, there is a reasonable idea that there may or may not be a retroactivity issue. And so instead of saying there are no retroactivity issues, you're supposed to say... Well, in this case, retroactivity is not an issue because X, Y, and Z, the reasons that were brought in Respondent's Brief here. She says Graham is not retroactive. It doesn't apply. And then she says juvenile jurisprudence, it is in a state of flux, but because this is a discretionary sentence, because this, this, and this, it's not retroactive. Instead, she concedes retroactivity, removes it from the case. She doesn't even say... Usually in these cases, you don't mention retroactivity. And you think it's fair to treat that as a concession that a case not yet cited or brought into the case is not retroactive, or can be? I think given the status of juvenile jurisprudence here, I think it's fair, especially because they went the extra mile and conceded no retroactivity issues. How important is that point to your case? I think it's fairly important. It's not essential. But it is helpful in that given Miller's issues and given the differences between procedural and substantive rules, it would be very helpful for a waiver to be found here, obviously. Before you sit down, when I criticized the abolition of parole, I was thinking the federal system. Does Illinois still have parole? They abolished parole in the 70s. Excuse me? They abolished parole in the 70s. So they also abolished parole. That's right. Okay. Well, thank you very much, Mr. Jackson. Ms. Akashia? May it please the Court? I am Assistant Attorney General Gopi Kashyap on behalf of Respondent. Your Honors, I'd like to start with the fair presentment issue. Petitioner did not fairly present an Eighth Amendment challenge through one complete round of state court review. Wait. Could you speak louder? I can't hear you. I apologize, Your Honor. Petitioner did not fairly present an Eighth Amendment claim through one complete round of state court review. Petitioner incorrectly states that in Illinois, the proportionate penalties clause is identical to the Eighth Amendment. People v. Patterson, which was decided after People v. Clemens, the Illinois Supreme Court stated there that the two provisions are coextensive. However, you have to—that statement must be read in context, and the context in which that was stated, it was as to whether the Eighth Amendment or the proportionate penalties clause applied at all in the first instance. And so in Patterson, the issue was whether an automatic transfer provision, which required that a juvenile be criminally prosecuted in criminal court rather than juvenile court, whether that particular provision even implicated the Eighth Amendment or the proportionate penalties clause by inflicting punishment. And so the Court there said that both provisions apply to provisions that inflict punishment and because that provision does not inflict punishment, then the Eighth Amendment and proportionate penalties clause— What is the sense of sentencing a 16-year-old to 100 years? Your Honor, it reflects the seriousness of the crime, and it is not prohibited by the Eighth Amendment at this time, Your Honors. All that the Eighth Amendment requires at this point in time is that an individualized determination occur before then. But obviously the Supreme Court—it doesn't have to be the Supreme Court—obviously people are concerned, and judges are concerned, about these extraordinary sentences for kids. Yes, Your Honor, they are concerned, and the Illinois courts have long been concerned about this. Illinois law has— Don't you think, for example—putting aside the procedural question—don't you think the logic of Miller would say that you can't sentence a juvenile to 100 years in prison without at least consideration of the particular circumstances of the crime and the psychological situation of the kid, whether he's retarded, whether he's got serious mental illness or what have you? Was there any consideration of these personal characteristics when he was sentenced? Yes, Your Honor, there was. First, let's start with what Illinois law required, and at the time, the Illinois law required that— No, I'm just interested in whether—what kind of inquiry was made into his sentence. His personal characteristics. Petitioner was permitted to present any mitigating evidence to the Illinois courts. He presented evidence that he was 16 years old, and evidence that he had a supportive family background, and that's what he submitted to the Illinois courts. The Illinois trial court reviewed that and stated on the record that Petitioner was 16, and in Illinois law— You'd think a judge in that situation would be sufficiently curious that he'd want to appoint some expert in juvenile psychology or something, right? To examine this person or discuss—it's the sort of thing that the Supreme Court, when it abolished the death penalty for juveniles, it referred to an academic literature on—I mean, it's been referred to in question, but it has elaborate footnotes dealing with questions of the mentality and self-control and so on, and whether there's some sort of threshold at age 18. This judge didn't seem to have any interest in this, in such issues. Well, Your Honor, we have to remember at what point the trial judge was sentencing this juvenile defendant. Moreover, trial courts routinely sentence juvenile defendants without— To 100 years in prison? No, Your Honor, but they sentence juvenile defendants without taking in psychological evidence. Well, how are other juvenile murderers? Do they all get 100 years? I am not sure, Your Honor. I would not know, but 100 years is de facto life. In Croft, for example, this court upheld a discretionary life sentence imposed on a juvenile where the same circumstances Your Honor is discussing were not presented to the trial judge, and the trial judge has discretion in reviewing what evidence that it wants to take in, but more so the burden is on the defendant to present that evidence, and that was available to Petitioner. He could have presented all the evidence Your Honor is discussing, and he could have argued all of those factors. But he was sentenced before Miller, right? He was definitely sentenced before Miller. Counsel, to Miller, can't that be regarded as changing the discourse on life sentences for juveniles? Not in Illinois, Your Honors, because in Illinois, rehabilitative potential— Illinois whirled unto itself, pays no attention to the U.S. Supreme Court. Counsel, would you agree that the comments by the sentencing judge in this case did not come up to the procedural requirements of Miller that Mr. Jackson has described in his brief, that is, having to go through a number of different factors and considerations to show why this is such an exceptional case that the most severe penalty available should be imposed? No, Your Honor, because— You think this satisfied Miller? Yes, Your Honor, because what Miller requires, and Miller relied on Woodson and Lockett and the individualized sentencing cases dealing with capital punishment. And in those cases, the constitutional requirement is that the mitigating evidence be considered by the trier effect, and that could be a jury or it could be a judge. No, that's the wrong approach, because what you're saying is, yeah, 100 years, that's presumptively fine, right? And the judge has no obligation to think about that this is a 16-year-old, he's sentencing 100 years, unless the defendant has put on a lot of evidence. In other words, the judge has no responsibility for thinking about these issues of excessive punishment of kids. No, Your Honor, that's not our position. The judge had a responsibility. No, that is your position. You're saying the defendant can present whatever evidence he wants in mitigation. It's his burden. You don't regard the judge as having any burden of assessing the appropriateness of the sentence, even if the defendant doesn't say a word. The judge had an obligation to consider the petitioner's age and his rehabilitative potential. An obligation to consider his age. If there's no evidence presented, what does the judge do with his age? It's everything we all know. What if he's 15? Does that change things? No, Your Honor. No, so what does the judge do with age? Age isn't evidence, right? He considers the attributes of age as... What did he say about the attributes of age? He stated that because petitioner was 16, he had an increased likelihood of rehabilitating himself while in prison, and the trial court considered that in conjunction with all of the other factors, Your Honor. And going back to Judge Hamilton's point about Miller, Miller addressed mandatory life without parole sentences. It also addresses the possibility of imposing in discretionary systems and says, for example, we require the court to take into account how children are different and how those differences counsel against irrevocably sentencing them to a lifetime in prison. Is there any indication in this state court record that the judge did so? I don't see it. Your Honor, Miller does state that. At the time that the trial court issued its decision, Miller was not there. I recognize that. My point is that I believe this does turn on the retroactivity of the procedural aspects of Miller. You can agree, disagree. I'm not... I haven't carved that position into stone in my own mind, but that's... I would appreciate your thoughts on the question rather than try to tell me that this sentencing judge complied years in advance with the procedural requirements of Miller. Miller is a procedural rule, Your Honor, and therefore does not apply retroactively to this case. This court in Croft specifically stated that it held that Croft is on all fours with this  In Croft, the petitioner argued that his discretionary life without parole sentence that was imposed before Miller was... did not follow Miller, and so therefore he wanted relief on that, and this court declined to impose relief. Because Miller... And it was handled on a pro se basis and not argued and so on. Well, Your Honor, this court can take judicial notice of the pleadings in that case, and the motion itself articulates the very same arguments the petitioner here argues for. But ultimately, Your Honor, whether this sentence is grossly disproportionate or... May I have time to... Yes, of course. And I... There's one other thing I'd like to follow up on. Oh, go ahead. No, go ahead. Finish your thought. Whether the sentence is grossly disproportionate or not, effectively if this court were to determine that the sentence for this particular crime was grossly disproportionate, it would effectively be creating a categorical bar in the situation. Okay. What I wanted to follow up on was the discussion in the briefs about the possibility that the state courts may actually still be open to this challenge by Mr. McKinley. And specifically, would this have to be treated as a successive petition at this point for Mr. McKinley? In the Illinois courts, yes. It would be a successive post-conviction petition under Miller, presumably. Is it too late to do that for Mr. McKinley? No, Your Honor. He can rely on a new rule that was applied retroactively on cloud overview. That's what Davis did. Okay. And even if we might have doubts about whether Miller applies retroactively, it's not our job to tell the Illinois courts not to. If they want to open themselves up to review this matter, if that seems like the proper course, should we just hold this? Should we stay? Should we remand? What procedurally do you think we should do? And I hope Mr. Jackson might address that briefly in rebuttal. To the extent that this court finds that Miller does apply to this case, the court has two options. It can hold it until Montgomery has decided the point. That may not occur because Montgomery presents an additional jurisdiction question. Right. Alternatively, it could remand and allow him to go pursue state court relief. At this point, though, Your Honors, we don't believe that you can grant habeas relief on a sentencing claim. So one option would be to remand to the district court with instructions basically to keep the case stayed while he pursues state court remedies. Yes, Your Honor. Let me just ask you about the murder. So another person handed McKinley the gun and told him to shoot this person, right? It's unclear from the record whether Petitioner took the gun from the other person and then the other person instructed him to shoot or whether the other person handed him the gun and instructed him to shoot. But it's undisputed that his co-defendant instructed the Petitioner to shoot or at least yelled. What was his sentence? He pled guilty, Your Honors, on the second day of jury selection. He received 17 and a half years for pleading guilty. He received how many? 17 and a half. I'm sorry. I didn't hear you. 17 and a half. 17 and a half years. Without the judge deciding whether he had actually instigated the murder? The co-defendant was 15 and he told a story as was reflected in the factual basis for the plea that he was sitting at home when Petitioner came to his house, told him to get the gun because he needed to go back and essentially confront this person who had disrespected him in some fashion and so his co-defendant got the gun and then met him outside and they went outside to confront these individuals and in confronting and then in that confrontation, Petitioner either took the gun or that co-defendant gave the gun to Petitioner. But the judge didn't decide whether he'd taken the gun or it had been handed to him. Your Honor, I do not recall whether the judge actually made that determination because it was a plea and so I think it was the factual basis that was offered by the state based on the co-defendant's statement to police. Okay. Thank you. So, Mr. Jackson, do I have any more time? No, so I'll have to be quick. Certainly. So I'll answer the avenues of relief. We believe that remaining to the state court's reconsideration of this through a second or successive petition wouldn't work because there's no direct precedent. Davis only deals with the mandatory sentencing scheme. But you want him re-sentenced, don't you? Well, you definitely want him re-sentenced. Now, there's a small chance that it would work. We have an appellate court decision. It's not published, unfortunately, but it's the exact same facts, the exact same sentencing scheme and the appellate court did reduce by 20 years an 80-year sentence based on Miller and Graham and Roper. So why shouldn't we remand, stay, let the Illinois courts do their work and then revisit the issue? Because it's not clear that we would win on the second or successive petition. Therefore, we would be uncertain and we'd be more comfortable with this court ordering a re-sentencing itself. Now, to close, it's clear that in this case, beyond all the procedural issues, there's a 16-year-old boy who was sentenced for reasons the Supreme Court expressly held to be unconstitutional. That violated the Eighth Amendment and we ask this court to remand for re-sentencing. Thank you. And you were appointed, were you not? I was appointed. Yes. Well, we thank you very much. You're welcome. And we thank Ms. Kashyap as well. And the court will stand in recess.